Good morning, your honors. Good morning. May it please the court, this is Maggie McCletchie for Appellant Gary Miller. I don't think the clock has started yet. Here we go. To avoid the unnecessary killing of pet dogs like Gary Miller's pet dog Blue in violation of the Fourth Amendment, the state of Nevada requires that all officers get training on canine encounters. That training teaches officers both how to assess dog behavior, in other words how to accurately perceive a threat, and how to consider and use alternatives to the kind of complete destruction we saw in this case. Defendant Deputy Toll, rather than take that training, lied, just like he lied about what happened when he interacted with Blue, and he fabricated his certificate of attendance. Unsurprisingly, Deputy Toll was ill-equipped when he encountered Blue and unnecessarily killed him on Gary Miller's property, and because he was not a reasonably well-trained officer, he was not an objectively reasonable officer. In nonetheless giving him a pass for the unnecessary killing of Blue, the District Court distorted the law in the traditional role of a jury in evaluating facts and objective reasonableness in highly fact-intensive Fourth Amendment context just because there's video. The judge ignored factual inferences that could be drawn in Miller's favor, such as how Blue acted. The judge ignored the evidence, the report of Crosby, showing that Deputy Toll's perceptions and responses were not objectively reasonable. Second, a court should not grant summary judgment on a Fourth Amendment claim if there is some evidence that a reasonable officer might have responded the way the defendant did. Instead, the District Court should only have granted summary judgment if there was no genuine issue of material fact that the officer acted objectively reasonably under the circumstances, and while the District Court wrote off James Crosby's evaluation of what happened as 2020 hindsight, what the District Court ignored is that rather than 2020 hindsight, James Crosby's report properly provided an interpretation of how an objectively reasonable officer would have responded under the circumstances. I think the more difficult issue that you need to deal with is the second part, the qualified immunity part, so could I Of course, thank you. Thank you, Your Honor. So with regard to qualified immunity, the District Court, again, essentially found that if a reasonable officer could have done what Toll did, then there is no constitutional violation. That's not the case. With regard to whether it is clearly established, all that this court requires is that the contours of the right be sufficiently clear that a reasonable officer would understand what he is doing violates that right. The defendants in the District Court essentially would require plaintiff to come forward with a case exactly under similar facts. That is not what is required. Every case provides different and novel facts and circumstances, and as this court has recognized over and over, it is not necessary for plaintiff to come forward with exactly the same case. What's the closest case you have? So I think it's even less extreme, I think, than a lot of the cases that this court has denied qualified immunity in or other circuits have. For example, I understand that in the Hells Angels case, this circuit noted, well, if they're surprised that an officer may be required to respond differently, but that case stands for the clear proposition that the unnecessary killing of a pet animal is a violation of the Fourth Amendment right, and I don't think we need to define the right more narrowly than that. And I think it's also important to point out that Hells Angels dealt with a much more dangerous situation, which was the execution of a high-risk search warrant and interactions with actually vicious dogs. In the Criscillo case, this court extended the right even to public property, and there it is true that the owner was present, but just like those are mitigating factors that show that the officer did not need to use force, here there were other reasons why the officer didn't need to use force, such as the fact that the dog was approaching in what is clear from the video to me, and was clear to the video in James Crosby's view, should have been clear to an objectively reasonably trained officer, that the dog was acting in a friendly manner. I got to tell you, let me stop you there, because I watched the video several times, and it didn't seem particularly friendly to me, and when your client came out of the house and the officer tried to explain what had happened, when your client is saying you shot my dog, you shot my dog, and the officer said he was attacking me, your client's spontaneous response was not that, oh he's a pussycat, his response was you're a stranger on the property, as if, yeah, I'm looking for him to attack strangers on the property. I'm not sure why the officer should have perceived this as a friendly dog that was trotting up to him to get a pat on the head, because it didn't look much like that to me from the video. Well, two things, Your Honor. I don't think what Gary Miller said is relevant to whether, is a reasonably trained officer would have perceived that behavior as a threat. Why can't it be relevant? I mean, he knows the dog better than anybody, and his response wasn't the dog is a pussycat, his response was you're a stranger. That suggests that he knows this dog may be prone to coming after somebody who's a stranger. We, in fact, presented extensive evidence in the District Court, Your Honor, that Mr. Miller's dog was actually friendly. Mr. Miller was angry and upset, and I don't think that it's necessarily relevant to whether at the time that the officer interacted with the dog, that the officer acted like an objectively reasonable, well-trained officer. Another point, Your Honor, is that a lot like the, I think it's the Veo case from the Seventh Circuit, which this court cited in Crispolo, there are two different stages of shooting that occur. First, Officer Toll, without even yelling, which happens in almost, which the officers at least tried to do in almost every single case, whether a qualified immunity was granted or not, but the officer, Officer Toll, Deputy Toll, never yells. He never makes a command and tells the dog to stay away. Now, defendants claim that that wasn't possible because he didn't want to disclose where he was. That's belied by the record, Your Honor, because Deputy Toll had already knocked on the door to announce his presence when the dog approached. Second, like Veo, there's two stages. The dog first, so Deputy Toll knocks on the door, secures the dog, draws his gun, and Blue approaches. And by the way, Blue is a 56-pound dog, not a very large, vicious, attacking, or lunging dog. And in Wickersham, the dog, it was uncontroverted, for example, where summary judgment was granted. It was uncontroverted that the dog didn't just approach the officer, but lunged at the officer. Further, when Officer Toll first started shooting, the dog was more than 20 feet away the first time. For the third and tenth time, it was about 10 feet away. Counsel, your arguments may be very, I think, useful with regard to the first issue, but it really doesn't take you as far as you want it to take you with regard to qualified immunity. Now, I think you raise a good point, and the record lends some support to the fact that had the officer been properly trained, perhaps his perception as to the danger posed by the dog would have been different. But the question on qualified immunity is a little bit different than that. It has to be that no reasonable officers could really disagree as a situation. Your best case may be Hell's Angel, which you cited, but it doesn't really cover the situation where an officer is reacting to unexpected or exigent circumstances like this. So, I'm still struggling to understand how you get past qualified immunity when you don't have the clearly established law that would overcome that. So, setting aside the factual issues in the record that really go to whether there's a Fourth Amendment violation, and can you address again the qualified immunity and the clearly established law that you're relying on? Well, even in qualified immunity, in considering whether a reasonable officer would know that they were clearly violating the law, the facts on the Fourth Amendment violations still have to be construed in the light favorable to the plaintiff. Further, I don't think the case is as dissimilar from the other cases as the court would posit. The right that has to be clearly established is the right to be free from the unnecessary use of force. And it's a reasonable officer, not an untrained officer. One of the core issues that the court, the core problems with what the district court did is the district court essentially said, well, how could he clearly know this was a violation? He wasn't trained. But in fact, the reasonable officer standard under qualified immunity and under Fourth Amendment analysis has to be a reasonably well-trained officer. And we cited extensive authority on that point. And I don't think this case is all that different from the cases. Here in Criscolo, for example, where there was no summary judgment, the dog was more aggressive than the dog at issue here. The owner was nearby, that's true, but the dog was far more aggressive. The dog had gotten into a fight with a police dog. And while the owner was nearby, that again was a much more vicious dog. In the Thurston case, there were two dogs. It was a Pitbull and a Mastiff. And while they had time to plan, because it was executing of a warrant, it was also a much more dangerous situation. And in the Hardin v. Nye case, the district court of Nevada found that summary judgment on qualified immunity was inappropriate. And in that case, there were six growling rottweilers surrounding the officer. And the dog was shot when it was five to 10 feet away. I think this case is a lot like the Veo case that this court cited with approval in Criscolo, because there, at the time that the officer shot the fatal shot, the dog was not, there was strong evidence that the dog was no longer a threat. Here, likewise, Blue was turned away from the officer and shot on the left side of his, towards his eye. And so, and that's exactly what happened. As I recall, Velo, there was a matter of minutes, like five or 10 minutes between the shots. The less than five seconds. I mean, the dog was approaching rapidly. Your description is it was 20 feet away at the time the first shot was fired, had veered, but was 10 feet away. That, I didn't try to time it, but the whole episode took less than 10 seconds. And so, I'm not sure that Velo really helps to distinguish the second set of shots from the first that we have here. The, I understand that it's not the exact same time, but there are. Well, it's not even close. I mean, five minutes apart and a few seconds apart, those are different situations. The officer, we have lots of multiple shooting cases. I don't know that it should apply to a dog, but we've learned from other cases that officers are trained, you're going to start shooting, keep shooting. The fact that you get these horrible cases where a dozen bullets hit somebody who's fallen, that's because they're trained, if you start shooting, keep shooting. And that's what this officer sadly did. Those cases are also different in that at the point that the officers are allowed to use deadly force, it's not assumed like it was in this case that the dog was dangerous. Again, a reasonably trained officer, a reasonably trained officer would have understood. I understand that a lay person looking at the video may have a different view, but a reasonably trained officer would not have perceived this as a threat. Further, all of this court's cases deal with that. Do not excuse an officer for taking no effort to retreat, no effort to use less than deadly force. In the other cases, for example, again, the officers all at least yelled at the dog and deputy told him no such thing. He muttered to himself and that is not the same thing. I'm going to reserve my one minute for rebuttal, Your Honor. All right. Thank you. Thank you. Good morning, Your Honors. May it please the court, Craig Anderson on behalf of Deputy Tall in Nye County. This court should affirm the district court's granting of summary judgment on both prongs of the qualified immunity analysis. A quick view of the video reveals that there was an immediate threat and the officer acted reasonably in stopping that immediate threat. The case law clearly allows this type of activity when the pit bull surprises the officer and then advances upon the officer barking. There is no case that would prohibit the use of deadly force in this situation. The most important factor is that the dog surprised the officer because the case laws that have denied summary judgment tend to focus on the officers had time to deliberate and or plan for the approach or the presence of the dog. When there is unknown that a dog is present, then the officers are found to be reasonable if the dog is advancing, is barking, and can proceed to be a threat. Well, it's certainly the case that there wasn't, as I think in Hell's Angels, for example, there was knowledge about anticipated canine contact. In this case, the officer presumably did not know about the dog in particular, but the circumstances of the kind of property this was and what I know comes mostly from the video and the little bit that I've read, dogs are not uncommon in that context. And that's one of the reasons why the state adopted the requirement for officers to be trained on what to deal or how to deal with dogs. Your client or your individual client in this case didn't take the training. So why shouldn't that be a factor that we weigh? Thank you, Your Honor. First of all, the officer was trained. There's a use of force policy in training that he cannot use deadly force against an animal unless it is an immediate threat. So his training was consistent with the Fourth Amendment. Now, the state of Nevada has chosen to provide additional training and have additional requirements. A state is free to exceed the expectations of the Constitution. The state can make standards that are higher than the Fourth Amendment. And the state's ability to require state standards would have the unintended effect of encouraging states not to require higher standards of their police officers than the Fourth Amendment requires. So to answer your question... So they have that motivation anyway, because presumably the state of... I mean, everybody files it as a 1983 action, but I assume that Nevada has an equivalent cause of action. Sometimes we see the cases where the state cause of action is joined in the complaint. Sometimes they're not. But if the Nevada legislature thought it was important enough to require its officers to get this training and pass the test, sounds like there may be a basis for saying he's liable and the Nevada legislature has decided to take that risk for whatever the state cause of action is. So I hear your point, but the Nevada legislature made its judgment even probably knowing that they exposed themselves to more risk under state law. And I understand that, Your Honor, but that does not change the Fourth Amendment. It would definitely be relevant if this were a negligence claim or a claim involving state law causes of action. But the state of Nevada cannot set the standards of the Fourth Amendment. Well, qualified immunity has certainly become more controversial. But as I understand it, the Supreme Court has articulated in a way that has the law or compliance with the law as a component. I mean, the quote that sticks in my head is that qualified immunity protects all but and this is the quote part, the plainly incompetent are those who knowingly violate the law. Well, in this case, the officer knew he didn't take the training. Why shouldn't that be enough to defeat qualified immunity? Okay, well, the officer had the training that it is unreasonable to shoot a dog that is not an immediate threat, which is the Fourth Amendment law. The additional training was to provide additional understanding to that, but it did not change the context of the Fourth Amendment. And so it's true that a plainly incompetent officer can violate the law, but a plainly incompetently trained officer can also act in accordance with the Fourth Amendment, just as a well-trained and highly skilled officer can violate the Fourth Amendment. That's why it's an objective standard in this case, is it's really irrelevant whether Deputy Toll took the training or not. The issue is in looking at the video and accepting the undisputed facts, looking at them in the light most favorable to Miller, did he violate the Fourth Amendment? And it would be inappropriate for me to sit here if Deputy Toll had received tons of training and extra training and say that's dispositive of the fact because he's so well-trained. The issue is just whether an objectively reasonable officer would have perceived an immediate threat based upon the facts confronting him at the time. Setting aside the question of qualified immunity counts, on the Fourth Amendment issue, the appellant in this case did present quite a bit of evidence regarding the training and the body language of the dog. Why isn't the evidence sufficient to at least create a triable question of fact on the Fourth Amendment violation? Because now we're talking about a reasonably trained officer, and that's separate from whether it's plainly incompetent not to have recognized that. But isn't it at least debatable as to whether there are lesser measures that should have been taken in this case? And if so, those questions should be for the jury and not a Fourth Amendment violation as a matter of law. I understand your question applies to the first prong of the qualified immunity analysis. What we are looking at is our initial view of the video as the dog approaches. Obviously, we can stop the video, slow it down, and determine that maybe it's wagging its tail, maybe it's not running aggressively. But I do believe that an objectively reasonable officer, when you watch the video for the first time, we all have the same impression that this pitbull is advancing upon the officer and barking. And then the question becomes, could a reasonable officer, not all officers, not every officer, but could a reasonable officer have perceived that activity of the pitbull to be an immediate threat? And I believe that based upon the video, because we have clear video that shows exactly what happened, a reasonable officer could have concluded that that pitbull presented an immediate threat. And I agree that maybe there are other officers that would see it differently, but we are just looking as to whether a reasonable officer could have perceived an immediate threat. And I believe that most of the analysis of the dog's body language, what it was doing, where it was going, that is done with the benefit of rewinding and re-watching the video, and the benefit of 20-20 hindsight, and not taking into account the immediate circumstances that we're confronting deputy toll. All right. Anything further, counsel? Just to sum up, then, is that I believe at least under the second prong of the qualified immunity analysis, the law is certainly not clearly established in the situation. Whenever there is an advancing animal that surprises an officer, the courts have granted qualified immunity. And I would cite the Wickersham and the Pino and the district court case out of Washington, and unless there's any further questions, I'll rest on that. No further questions. Thank you, counsel. Thank you, Your Honor. There's about a minute left on rebuttal. Thank you, Your Honor. So the court and opposing counsel are not officers. The standard under the Fourth Amendment is a reasonably trained officer, not how a layperson sees the video. By definition, officer toll was plainly incompetent because he did not receive the training that a reasonably well-trained officer in Nevada would have obtained. And with regard to the Fourth Amendment issues and the rights created by the training, it's my view that the Fourth Amendment right stems from property law with regard to pet dogs. And Nevada has seen fit to say, officers, you cannot interfere with property unless you have the property of dogs, unless you have this specific training. That officer toll got some basic message that killings of dogs implicate the Fourth Amendment is not relevant. The question is whether a reasonably trained officer would have responded like deputy toll, and the answer is no. All right. Thank you to both sides for your argument today. The matter is submitted. Our last case on the calendar for
judges: CLIFTON, BEA, NGUYEN